IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

QUINTON JOHNSON, #856571,
    Petitioner,

                                      Case No.:  5:05cv3/SPM/EMT

JAMES V. CROSBY, JR.,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer (Doc. 8), and Petitioner filed a reply (Doc. 13).

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.Fla. Loc. R. 72.2(b).  After a careful review of the state court proceedings and consideration of all issues raised by Petitioner, it is the opinion of the undersigned that an evidentiary hearing is not required for disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

       On May 25, 2000, following a jury trial, Petitioner was convicted in the Circuit Court in and for Bay County, Florida, of aggravated battery (Doc. 9, Ex. B).  On June 8, 2000, Petitioner was sentenced to seven years of incarceration to be followed by eight years of probation (Doc. 9, Ex. A at 106-25).  Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal ("First DCA") (Doc. 9, Exs. C, D, E).  On October 12, 2001, the appellate court issued a written opinion affirming the conviction, with the mandate issuing December 14, 2001 (Doc. 9, Exs.

H, K). Johnson v. State, 800 So.2d 275 (Fla. 1st DCA 2001).  Petitioner sought discretionary review by the Florida Supreme Court, but the court declined to accept jurisdiction (Doc. 9, Exs. L, M, N, O).  Johnson v. State, 821 So.2d 297 (Fla. May 28, 2002) (Table).

On July 30, 2002, Petitioner filed a motion for postconviction relief in the trial court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 9, Ex. P at 124-46).  The state court summarily denied two of Petitioner's claims and ordered an evidentiary hearing on the remaining two grounds (*id*. at 176-77).  Following an evidentiary hearing, the trial court denied the motion as to the remaining two grounds (Doc. 9, Ex. P at 229; Ex. Q).  Petitioner appealed the order denying his postconviction motion to the First DCA.  The First DCA affirmed the decision per curiam without opinion on December 16, 2004, with the mandate issuing January 4, 2005 (Doc. 9, Exs. U, V).  Johnson v. State, 889 So.2d 75 (Fla. 1st DCA Dec. 16, 2004) (Table).

Petitioner initiated the instant section 2254 action on December 27, 2004 (Doc. 1 at 6).  His petition presents the following grounds for relief:

> Ground one:  The trial court erred in allowing the State to introduce a statement he [Petitioner] made to a police officer without the benefit of a Miranda warning.
>
> Ground two:  Denial of his right to effective assistance of counsel because counsel failed to move for discharge when the filed [sic] amended information after speedy trial had run.

(Doc. 1 at 4 and continuation pages).

Respondent concedes the petition is timely and that Petitioner exhausted his state court remedies (Doc. 8 at 8-9, 10, 20).

II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[1] The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

---

[1] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and –-except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523). The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003); Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Although Williams set forth the Supreme Court's interpretation of § 2254(d)(1), not § 2254(d)(2), the Court subsequently enunciated the § 2254(d)(2) standard:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2); see also Williams, 529 U.S. at 399, 120 S.Ct. 1495 (opinion of O'CONNOR, J.).

Miller-El, 537 U.S. 322, 123 S.Ct. at 1041 (dicta).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate, 261 F.3d at 1216 (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies

'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541

U.S. 652, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this Court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

Within this framework, this court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

A.   Ground one: The trial court erred in allowing the State to introduce a statement he [Petitioner] made to a police officer without the benefit of a Miranda warning.

Petitioner claims that the trial court should have excluded Petitioner's incriminating statement to police on the ground that the arresting officer should have given him a Miranda[2] warning prior to asking him, "What happened?" (Doc. 1 at 4).

1.   Clearly Established Supreme Court Law

The Fifth Amendment prohibits the admission into evidence of a criminal defendant's involuntary confessions made in response to custodial interrogation. Withrow v. Williams, 507 U.S. 680, 688, 113 S.Ct. 1745, 1751, 123 L.Ed.2d 407 (1993). One who is placed under custodial interrogation must be informed of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). So long as the purpose of the interrogation is to seek evidence to be used against the accused at trial, the interrogator need not be a law enforcement official. See Powell v. Texas, 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989); Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); Battie v. Estelle, 655 F.2d 692, 698-99 (5th Cir. 1981).[3] Courts should "employ the totality-of-circumstances approach" when determining under federal habeas review whether evidentiary use of the confession violated the defendant's rights. Withrow, 507 U.S. at 688-89, 113 S.Ct. at 1751; Garcia v. Singletary, 13 F.3d 1487, 1492 (11th Cir. 1994).

The Eleventh Circuit recently set forth the following standard for analyzing whether a defendant was "in custody" for Miranda purposes:

---

[2] Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

The right to Miranda warnings attaches when custodial interrogation begins. *See* Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); Dickerson v. United States, 530 U.S. 428, 435, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405 (2000). Normally courts apply a two-part test to determine whether a suspect is in custody for Miranda purposes: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995). As we have already discussed, a suspect who is detained during a Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop is not free to leave from the beginning of the stop until it ends. If we applied the general Miranda custodial test literally to Terry stops, the result would be that Miranda warnings are required before any questioning could occur during any Terry stop.

The Supreme Court in Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), has indicated to the contrary. In that decision, the Court explained that the non-threatening nature of a Terry stop is the reason for "the absence of any suggestion in [the Court's] opinions that Terry stops are subject to the dictates of Miranda." *Id.* at 440, 104 S.Ct. at 3150 (dictum). The holding of Berkemer is more limited than the implications of that language, because the case involved a traffic stop and not a Terry stop of a suspected felon. Nonetheless, the Berkemer decision and opinion does provide guidance on the issue of when Miranda warnings may be required before interrogation during a Terry stop.

The guidance the Berkemer decision provides stems from the fact that traffic stops, like Terry stops generally, are indeed stops. A reasonable person knows that he is not free to drive away from a traffic stop until it is completed, just as a reasonable person knows that he is not free to walk away from a Terry stop until it is over. If the lack of freedom to leave were decisive, which is to say if every phrase in the Miranda opinion is to be applied literally, then all traffic stops as well as all Terry stops generally would be subject to the requirements of that decision. Berkemer establishes that they are not.

The Court explained in Berkemer that it "decline[d] to accord talismanic power to the phrase in the Miranda opinion," that "Miranda by its terms applies whenever 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Berkemer, 468 U.S. at 435-37, 104 S.Ct. at 3148 (quoting Miranda, 384 U.S. at 444, 86 S.Ct. at 1612). Instead of asking whether a suspect reasonably would feel free to leave, the Berkemer Court instead said the question should be "whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Id.* at 437, 104 S.Ct. at 3149. Put another way, suspects "subjected to restraints comparable to those associated

with a formal arrest," must be advised of their Miranda rights. *Id.* at 441, 104 S.Ct. at 3151; *see also* California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam).

The Supreme Court recognized in Berkemer that a driver detained during a typical traffic stop is not free to leave, and is therefore "seiz[ed] within the meaning of [the Fourth] Amendmen[t]." Berkemer, 468 U.S. at 436-37, 104 S.Ct. at 3148. However, the Court recognized two key factors which, in the context of a traffic stop, mitigate the pressures upon a detained person so that his ability to exercise his privilege against self incrimination is not so impaired that he need be warned of his constitutional rights under Miranda. First, "detention of a motorist pursuant to a traffic stop is presumptively temporary and brief." *Id.* at 437, 104 S.Ct. at 3149. The Court distinguished traffic stops, which ordinarily "last only a few minutes," *id.*, from a "stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." *Id.* at 437-38, 104 S.Ct. at 3149. The Court explained that the brief and typically spontaneous nature of the usual traffic stop:

> reduces the danger that the driver through subterfuge will be made to incriminate himself. One of the investigative techniques that Miranda was designed to guard against was the use by police of various kinds of trickery-- such as "Mutt and Jeff" routines--to elicit confessions from suspects. A police officer who stops a suspect on the highway has little chance to develop or implement a plan of this sort.

*Id.* at 438 n. 27, 104 S.Ct. at 3149 n. 27 (internal citations omitted).

The second factor associated with a traffic stop that the Berkemer Court recognized as reducing the pressure to respond to incriminating questions is that most traffic detainees would not "feel[ ] completely at the mercy of the police." *Id.* at 438, 104 S.Ct. at 3149. The Court recognized that the inherent authority of armed police officers "exert[s] some pressure on the detainee to respond to questions," *id.*, but the Court concluded that this inherent authority was more than offset by other aspects of such a stop:

> Passersby, on foot or in other cars, witness the interaction of officer and motorist. This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse. The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability. In short, the

>
> atmosphere surrounding an ordinary traffic stop is substantially less "police dominated" than that surrounding the kinds of interrogation at issue in <u>Miranda</u> itself. . . .

*Id.* at 438-39, 104 S.Ct. at 3149.

<u>United States v. Acosta</u>, 363 F.3d 1141, 1148-50 (11th Cir. 2004).

    2.  Federal Review of State Court Decision.

Petitioner raised this claim in the direct appeal of his conviction. The state appellate court found the facts as follows:

> Clark was driving to work in his truck on October 6, 1999, with his girlfriend, Stephanie Hearn. The defendant and his son were in another truck traveling in the same direction. Clark passed the defendant and his son and then apparently changed lanes too quickly in front of them. When the two vehicles came to a stoplight, each was positioned beside the other, and the defendant began yelling and cursing at Clark. He was upset that Clark had cut him off.
>
> Clark and the defendant got out of their trucks. The defendant's son also got out and walked towards Clark with his hand in his pocket as if to retrieve a weapon. Clark got back into his truck, and, as he reached to close the door, he felt something hit him in the back of the arm. He turned to see the defendant standing in the street with a rake in his hand. Clark then grabbed a baseball bat from the cab of the truck and swung it at the rake.
>
> A scuffle ensued, and the defendant pushed Clark up against his truck and began to choke him. While the two men were fighting, the defendant's son got a chainsaw out of the back of his truck and attempted to start it. He could not get the chainsaw started, so he put it down, walked over to Clark, and hit him with his hands. Stephanie Hearn then got out of Clark's truck, picked up the rake handle, and hit the defendant's son with it. At that point, a highway patrol officer arrived on the scene. The officer and two civilians broke up the fight, and soon other law enforcement officers arrived.
>
> Officer Sherry Thompson of the Lynn Haven Police Department was one of the officers dispatched to the scene. When Officer Thompson arrived, the occupants of both trucks were still out in the middle of the street. Thompson had the vehicles moved out of the way and picked up some articles and put them in the trunk of her car. She noticed that Clark was bleeding and was being treated by emergency medical technicians. At that time, Thompson did not know how Clark had been injured.

      The defendant testified in a proffer that when Officer Thompson approached him, she told him to move his truck into the parking lot and to wait for her there. Officer Thompson did not recall the conversation in the same way. She said that she asked the defendant to move his truck, but that he was free to leave if he wished. In any event, Officer Thompson subsequently walked over to the defendant and asked, "what happened?" She did not advise the defendant of his constitutional rights before asking this question, but she explained that she considered it unnecessary, because the defendant was not under arrest at the time.

      In response to the officer's question, the defendant said that he thought Clark might be drunk and that he feared Clark might injure someone. He said that he asked Clark what his problem was, and then the two men exchanged words. The defendant told Officer Thompson that Clark pulled out a baseball bat and hit him in the arm with the bat. However, he admitted to the officer that he grabbed the rake and hit Clark in the arm with it as Clark was getting back into his truck to leave.

Johnson, 800 So.2d at 276-77.

    The state court expressly identified Miranda, Berkemer, and Terry, as setting forth the legal standard for determining whether a defendant was "in custody" for Miranda purposes. *Id.* at 278-79. The court articulated that standard as requiring Miranda warnings "only if the restraint is like that associated with an arrest," considering such factors as "1) the manner in which police have summoned the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect was confronted with evidence of guilt; and (4) whether the suspect was informed of a right to leave the place of questioning." *Id.* at 277-78 (citations omitted). Applying this standard, the court concluded that Petitioner's brief detention by police, at which time Petitioner was asked by Officer Thompson to remain at the scene, in full view of the public, and then asked an open-ended question, "what happened?" was not the equivalent of police custody for Miranda purposes. *Id.* at 279.

    The state court identified the correct legal standard, and the instant facts are not "materially indistinguishable" from any relevant Supreme Court case; therefore, Petitioner is entitled to federal habeas relief only if he establishes that the state court decision was unreasonable.

    Petitioner contends he was in custody at the time the officer asked him what happened because the officer took his identification and directed him to wait for her at a nearby parking lot (Doc. 13 at 3-5). He argues no reasonable person in these circumstances would believe he was free

to leave (*id*. at 5).  However, as the Supreme Court noted in <u>Berkemer</u>, the inquiry is not whether Petitioner reasonably felt free to leave; instead the question is whether the stop exerted upon Petitioner pressures that sufficiently impaired his free exercise of his privilege against self-incrimination.  468 U.S. at 437, 104 S.Ct. at 3149.  Petitioner was in a very public area, confronted by only one officer, and asked simply what happened.  He was not exposed to circumstances which would make a reasonable person feel pressured to respond to incriminating questions.  Therefore, he was not in custody such that the officer was required to advise him of his <u>Miranda</u> rights prior to questioning him.  Accordingly, the state court decision denying Petitioner's claim was not unreasonable.

> B.  <u>Ground two:  Denial of his right to effective assistance of counsel because counsel failed to move for discharge when the filed [sic] amended information after speedy trial had run.</u>

Petitioner next claims he received ineffective assistance of counsel on the ground that counsel failed to seek dismissal of the amended information on the ground that it was filed after the period for a speedy trial had run (Doc. 1 at 4).  He claims that the original information charging him with felony battery, a third degree felony, was filed on November 17, 1999, and on May 22, 2000, after the jury was sworn, the State filed an amended information charging him with aggravated battery, a second degree felony (Doc. 13 at 5).

> 1. Clearly Established Supreme Court Law

The legal standard clearly established by the Supreme Court for ineffectiveness of counsel claims is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); <u>Fugate v. Head</u>, 261 F.3d 1206, 1216-17 (11th Cir. 2001); <u>Wellington v. Moore</u>, 314 F.3d 1256,  1260 (11th Cir. 2002) (both citing <u>Williams v. Taylor</u> and <u>Strickland</u>).  The two components of an ineffectiveness claim under <u>Strickland</u> are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  <u>Strickland</u>, 466 U.S. at 697, 104 S.Ct. at 2069; <u>Wellington</u>, 314 F.3d at 1260.  In assessing performance, the court considers whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  466 U.S. at 686, 104 S.Ct. at 2064.  "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside

the wide range of professionally competent assistance." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner must show that "no competent counsel would have taken the action that his counsel did take." Fugate, 261 F.3d at 1217 (citation omitted).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. Wellington, 314 F.3d at 1260. The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693, 104 S.Ct. at 2067). However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693-94, 104 S.Ct. at 2068. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. at 2068. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519.

        2.        Federal Review of State Court Decision

Petitioner raised his claim in his Rule 3.850 motion (*see* Doc. 9, Ex. P at 124-27). In the written order denying Petitioner's claim, the state court found as fact that the State filed an information charging Petitioner with felony battery on November 17, 1999, and an amended information on May 22, 2000 (*id.* at 176, 186-87). Additionally, the state court identified Strickland as the applicable legal standard for claims of ineffective assistance of counsel. The court concluded that Petitioner's right to a speedy trial was not violated, and that Petitioner failed to satisfy either prong of the Strickland standard.

Rule 3.191 of the Florida Rules of Criminal Procedure provides, in relevant part:

> **(a) Speedy Trial without Demand.** Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) [governing prisoners outside the jurisdiction of Florida] and (f) [governing consolidation of a felony and misdemeanor], every person charged with a crime by indictment or information shall be brought to trial within 90 days if the crime charged is a

      misdemeanor, or within 175 days if the crime charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p). The time periods established by this subdivision shall commence when the person is taken into custody as defined under subdivision (d).

Subdivision (d) of the rule provides that a person is taken into custody when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged. Fla.R.Crim.P. 3.191(d). The remedy for the State's failure to bring a defendant to trial within the requisite time period is that the defendant may file a "Notice of Expiration of Speedy Trial Time," and within five days a hearing must be held. Fla.R.Crim.P. 3.191(p)(2). At the hearing, the trial court must determine whether one of the reasons for an extension of time exists, as enumerated in the rule. Fla.R.Crim.P. 3.191 (j), (p)(1). Upon a finding that none of the reasons exist, the defendant must be brought to trial within ten days of the date of the trial court's order finding that a violation of the rule occurred and that no reason exists for an extension. Fla.R.Crim.P. 3.191(p)(3). This is know as the ten-day "recapture" period. If trial does not commence within the "recapture" period, the defendant may file a motion for discharge which, if granted, forever discharges the defendant from the crime. Fla.R.Crim.P. 3.191(p)(3), (j), (n).

      Initially, the record shows that Petitioner waived his right to a speedy trial at a pre-trial hearing on January 19, 2000 (*see* Doc. 8 at 26-27, Exs. A and P at 16). The waiver was well within the speedy trial period, as it was 105 days after Petitioner's arrest (*id*.). In his reply to Respondent's answer to the instant petition, Petitioner does not dispute the waiver. Therefore, Petitioner has failed to establish a meritorious basis for a motion for discharge on speedy trial grounds. Furthermore, Petitioner has failed to demonstrate a reasonable probability that the outcome of the trial would have been different if counsel had sought discharge on speedy trial grounds. Pursuant to the procedural rule, the remedy for a speedy trial violation is not immediate discharge from the crime; rather, the State is afforded a "recapture" period to bring the defendant to trial. Fla.R.Crim.P. 3.191(p). Petitioner has failed to demonstrate a reasonable probability that the State would not have brought him to trial within the requisite ten-day "recapture" period, especially in light of the fact that the evidence was the same for the offense originally charged and the offense charged in the amended information, and the trial was scheduled to commence on the same day the amended information was

filed.  To the extent Petitioner argues counsel should have filed the notice of expiration prior to the filing of the amended information, he has still failed to demonstrate prejudice, as he has failed to show a reasonable probability that the State would not have filed the amended information charging him with the more serious crime and commenced the trial within the ten-day "recapture" period, or that the result of the trial would have been different.  In sum, Petitioner has failed to establish that his counsel performed deficiently in failing to seek discharge on speedy trial grounds, and he has failed to demonstrate he suffered <u>Strickland</u> prejudice as a result of counsel's alleged error.  Therefore, the state court decision denying his claim was not unreasonable.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**, and the clerk be directed to close the file.

At Pensacola this 2nd day of November 2005.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**